IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LLOYD HICKS,                    )
                                )
         Plaintiff,             )
    v.                          )
                                )         1:16CV1236
JAYCO, INC.,                    )
                                )
         Defendant.             )

                     **MEMORANDUM OPINION AND ORDER**

    This matter comes before the Court on Defendant Jayco, Inc.'s ("Jayco") Motion to Dismiss ("Motion") [Doc. #9] pursuant to Federal Rule of Civil Procedure 12(b)(2). For the reasons explained below, Jayco's Motion will be denied.

    Jayco is a Recreational Vehicle ("RV") manufacturer incorporated in Indiana with its principal place of business there. (Compl. [Doc. #5] ¶ 4; Newcomer Aff. [Doc. #10-1] ¶ 3.) According to the Complaint, on May 16, 2015, Mr. Hicks, a resident of King, North Carolina, purchased a Jayco RV from Tennessee RV Sales and Service ("Tennessee RV") in Knoxville, Tennessee. (Compl. ¶¶ 2, 5, 6.) The RV came with a limited warranty from Jayco. (Id. ¶¶ 7, 8.) Since he bought the RV, it has been out of service for warranty repairs for over two months. (Id. ¶ 18.) Mr. Hicks alleges that, throughout this time, he has been in continuous contact with both Tennessee RV and Jayco and that the RV continues to suffer from defects and nonconformities. (Id. ¶¶ 19, 21.) Except for the final repair

work done at Bill Plemmons RV World,[1] Mr. Hicks took the RV to Tennessee RV for all servicing. (Id. ¶¶ 13-15.) Ultimately, on May 20, 2016, Jayco transported the RV from Bill Plemmons RV World to its factory in Middlebury, Indiana for repairs. (Id. ¶ 16.) On that occasion, Jayco kept the RV for twenty-five days. (Id.) However, according to the Complaint, despite all repair attempts, the RV continued to experience a multitude of problems. (Id. ¶ 17.)

As a result of these events, Mr. Hicks filed the present action against Jayco asserting claims for (1) breach of implied warranty of merchantability pursuant to North Carolina General Statute § 25-2-314 and (2) breach of express/implied warranty pursuant to the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 et seq. (See generally Compl.) In support of his first claim for relief, Mr. Hicks alleges that Jayco "breached the implied warranty of merchantability" because the RV was "not in merchantable condition when sold or at any time thereafter, was not fit for the ordinary purposes for which such goods are used, and will not pass without objection in the trade." (Compl. ¶ 27.) In support of his second claim for relief, Mr. Hicks asserts that he was damaged by Jayco's failure to comply with its warranty of the RV and is, therefore, "entitled to a refund of the [RV's] purchase price" and other damages. (Id. ¶ 39.) In response, Jayco moved to dismiss the

---

[1] The Complaint does not specify where Bill Plemmons RV World is located, but an internet search shows two locations as of March 14, 2018, Winston-Salem and Raleigh, North Carolina. Bill Plemmons RV World, http://www.billplemmonsrv.com (last visited March 14, 2018).

2

Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. (Mot. to Dismiss.)

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence, either at trial or at a pretrial evidentiary hearing." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, n.5 (4th Cir. 2005) (citing Prod. Grp. Int'l v. Goldman, 337 F. Supp. 2d 788, n.2 (E.D. Va. 2004)). "But when . . . the court addresses the question on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." Id. at 294 (citing Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989), and In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997)). "Under such circumstances, courts 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" Id. (quoting Combs, 886 F.2d at 676). A plaintiff makes a prima facie showing in this context when it "present[s] evidence sufficient to defeat a motion for judgment as a matter of law." In re Polyester Staple Antitrust Litig., No. 3:03CV1516, 2008 WL 906331, at *7 (W.D.N.C. Apr. 1, 2008) (quoting Reese Bros., Inc. v. U.S. Postal Serv., 477 F. Supp. 2d 31, 36 (D.D.C. 2007)); see also Mattel, Inc. v. Greiner & Hausser GmbH, 354 F.3d 857, 862 (9th Cir. 2003) cited in Universal Leather, LLC

3

v. Koro AR, S.A., 773 F.3d 553, 561 (4th Cir. 2014) (stating that a plaintiff makes a prima facie showing of personal jurisdiction by presenting facts that, if true, would support jurisdiction). Stated another way, a plaintiff makes a prima facie showing when there is evidence which, if true, a reasoning mind could accept as sufficient to support the proposition in question.

Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure confers personal jurisdiction over any defendant who would be subject to personal jurisdiction under the long-arm statute of the state in which the district court sits. In order for a district court to exercise personal jurisdiction over a defendant pursuant to a state long-arm statute, (1) the forum state's long-arm statute must authorize the exercise of personal jurisdiction and (2) the defendant must have sufficient minimum contacts with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment. Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001). Because North Carolina's long-arm statute "is designed to extend jurisdiction over nonresident defendants to the fullest limits permitted by the Fourteenth Amendment's due process clause," these inquiries collapse into one. See ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir.1997). "Thus, the court's focus becomes whether the plaintiff has made a prima facie showing that the defendant's contacts with North Carolina satisfy constitutional due process." JPB Installers, LLC v. Dancker, Sellew & Douglas, Inc., No. 1:17CV292, 2017 WL 2881142, at *2 (M.D.N.C. July 6, 2017) (internal citation omitted).

In International Shoe Co. v. Washington, 326 U.S. 310 (1945), the Supreme Court recognized that due process authorizes a state to "exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 923 (2011) (quoting Int'l Shoe Co., 326 U.S. at 316) (internal quotations omitted) (alteration in original); accord Daimler AG v. Bauman, ___ U.S. ___, 134 S. Ct. 746, 754 (2014). Two categories of personal jurisdiction have developed from this principle: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty., ___ U.S. ___, 137 S. Ct. 1773, 1780 (2017). "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Id. (internal quotations and citations omitted). In contrast, a court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." Id.

First, there is no general jurisdiction over Jayco.[2]  Corporations are subject to general jurisdiction in any state where "their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."  Goodyear, 564 U.S. at 919.  A corporation's "place of incorporation and principal place of business are paradig[m] . . . bases for general jurisdiction."  Daimler, 134 S. Ct. at 760.  It is the "exceptional case" when a court exercises general jurisdiction in a forum outside of those paradigm bases.  Id. at n.19.  Jayco is an Indiana corporation with its principal place of business and its manufacturing facility in Middlebury, Indiana.  (Newcomer Aff. [Doc. #11-1] ¶ 3.)  Jayco is not incorporated in North Carolina nor does it have its principal place of business here.  (Id. ¶¶ 4, 13.)  It also has no employees or agents in North Carolina. (Id.)  As the Supreme Court recognized in Daimler, a corporation cannot be considered "at home" when it "operates in many places" because it "can scarcely be deemed at home in all of them."  134 S. Ct. at 762 n.20.  Jayco's contacts with North Carolina are not "so constant and pervasive as to render [Jayco] essentially at home in the forum State."  Id. at 751 (internal quotations and citation omitted).

---

[2] Mr. Hicks did not address Jayco's arguments regarding lack of general jurisdiction, thus, conceding the issue.  "A party's failure to address an issue in its opposition brief concedes the issue.  See Brand v. N.C. Dep't of Crime Control & Pub. Safety, 352 F. Supp. 2d 606, 618 (M.D.N.C. 2004) (concluding that "[i]n Plaintiff's brief in response to Defendants' motion for summary judgment, Plaintiff does not address . . . his hostile work environment claim [and in so doing], Plaintiff concedes that he has not stated a hostile work environment claim")."  High v. R & R Transp., Inc., No. 1:15CV554, 2017 WL 1102854, at *10 (M.D.N.C. March 16, 2017).  Nonetheless, even an analysis of general jurisdiction shows that it does not exist here.

There is nothing before the Court suggesting that Jayco is "at home" in North Carolina nor that Jayco has "continuous and systematic" contacts with North Carolina. Mr. Hicks has not met his prima facie burden as to general jurisdiction.

However, there is specific jurisdiction for one of the claims in this cause of action. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear, 564 U.S. at 919 (internal marks and citation omitted). For jurisdiction to comport with the limits of due process, the defendant's suit-related conduct must create a substantial connection with the forum state. Walden v. Fiore, ___ U.S. ___, 134 S. Ct. 1115, 1121 (2014). This jurisdictional inquiry focuses on whether the defendant has sufficient minimum contacts with the forum and whether the plaintiff's cause of action arises out of or relates to those forum-related contacts. Id. at 1121. To decide whether or not specific jurisdiction exists, a court examines "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Mitrano v. Hawes, 377 F.3d 402, 407 (4th Cir. 2004).

The initial inquiry, purposeful availment, "is grounded on the traditional due process concept of 'minimum contacts[.]'" Universal Leather, 773 F.3d at 559. "[A] single act can support jurisdiction," so long as that act "creates a 'substantial connection' with the forum." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475

7

n.18 (1985). "[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." Id. at 474. "Th[e] 'purposeful availment' requirement ensures that a defendant will not be hauled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Id. at 475 (internal citations omitted); see also Unspam Techs., Inc. v. Chernuk, 716 F.3d 322, 328 (4th Cir. 2013); ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 392 (4th Cir. 2012).

Courts analyze "various nonexclusive factors" to determine if a corporate defendant has purposefully availed itself of the privilege of conducting activities in the state, including, but not limited to:

- whether the defendant maintains offices or agents in the forum state,
- whether the defendant owns property in the forum state,
- whether the defendant reached into the forum state to solicit or initiate business,
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state,
- whether the parties contractually agreed that the law of the forum state would govern disputes,
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship,
- the nature, quality and extent of the parties' communications about the business being transacted, and
- whether the performance of contractual duties was to occur within the forum.

Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted). Although several of these factors involve the physical presence

8

of a defendant in a forum state, "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, [the Supreme Court has] consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." Burger King, 471 U.S. at 475.  On the other hand, "the Fourth Circuit has given great weight to the question of who initiated the contact between the parties." Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp., 825 F. Supp. 2d 664, 682 (M.D.N.C. 2011); see also Universal Leather, 773 F.3d at 562 (noting that "the fact that a defendant initiated contact with the plaintiff in the forum state and repeatedly reached into the forum state to transact business during in-person visits there" "significantly" impacted the personal jurisdiction analysis) (internal quotations omitted).

Under the second prong of the test for specific jurisdiction, a defendant's contacts with the forum state must form the basis of the suit. Consulting Eng'rs, 561 F.3d at 278–79.  The relationship with the state must arise of out of contacts that the defendant itself creates with the forum state, and the plaintiff cannot be the only link between the defendant and the forum. Walden, 134 S. Ct. at 1123.

Under the third prong's constitutional reasonableness inquiry, a defendant "who purposefully has directed his activities at forum residents" defeats jurisdiction if he can "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477.  "This prong of the analysis 'ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison

to his opponent.'" Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 303 (4th Cir. 2012) (quoting CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 296 (4th Cir. 2009) (internal quotation marks omitted), cert. denied, ___ U.S. ___ , 133 S. Ct. 846 (2013).

Mr. Hicks argues that Jayco purposefully availed itself of the privilege of doing business in North Carolina with the operation of its website and the presence of six Jayco dealerships in North Carolina. (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to Dismiss [Doc. #15] at 5,6.) In support of his argument, Mr. Hicks submitted a screenshot of Jayco's website showing six authorized dealers in North Carolina. (Jayco Website Screenshot [Doc. #15-1].) Jayco admits that it maintains a website that provides information on its products and identifies authorized dealers, but nothing is sold through the website. (Newcomer Aff. [Doc. #11-1] ¶ 13.)

The Fourth Circuit has addressed "when electronic contacts with a State are sufficient" to exercise personal jurisdiction over a defendant. ALS Scan, Inc. v. Dig. Serv. Consultants, Inc., 293 F.3d 707 (4th Cir. 2002). "A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction." Id. at 714. In contrast, "[w]hen a defendant runs an interactive site, through which he enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, he can properly be haled into the courts of that foreign jurisdiction." Carefirst of Maryland, Inc. v. Carefirst

10

Pregnancy Centers, Inc., 334 F.3d 390, 399 (4th Cir. 2003). The evidence here shows a website that provides consumers with contact information for authorized Jayco dealers in North Carolina (or any other state searched) – nothing more. There is nothing before this Court to support a finding that Jayco's website rises to the level of "minimum contacts" sufficient to show that it purposefully availed itself of the privilege of conducting business in North Carolina.

However, Mr. Hicks' second argument, that "Jayco has purposely availed itself of the benefits of doing business in the State of North Carolina [by] maintaining established, contractual business relationships with six authorized Jayco dealers located in this State," (Pl.'s Mem. of Law in Opp'n to Def.'s Mot. to D [Doc. #15] at 5) is more compelling. According to Mr. Hicks, Jayco sells and ships RVs to its North Carolina dealers and knows that these products will be sold in North Carolina to North Carolina residents. (Id.) Further, "Jayco pays its dealers to repair them under Jayco's manufacturer warranty" and "on at least one occasion in this case, sent its agent or employee to North Carolina to transport Plaintiff's motorhome from there to Jayco in Indiana for repairs and back." (Id.)

In response, Jayco submitted the affidavit of its Consumer Affairs Manager, Craig Newcomer. (Newcomer Aff. [Doc. #11-1].) With regard to Mr. Hicks' RV, Newcomer avers that sometime prior to May 16, 2015, "Jayco, the final-stage assembler of the Motorhome, assembled the Motorhome at its facilities in Indiana and sold the Motorhome to Tennessee RV Sales and Service ("Tennessee RV") in Knoxville, Tennessee." (Id. ¶ 5.) Newcomer further avers that

11

> Tennessee RV is an independently owned and operated authorized dealer of Jayco products. Jayco assembles recreational vehicles that are sold to independently owned and operated dealerships throughout the United States, including North Carolina. While Jayco pays taxes to North Carolina on sales made into North Carolina, neither Jayco, nor any of Jayco's affiliates maintains any form of ownership or control over the operations of the independently owned and operated dealerships, including Tennessee RV.

(Id. ¶ 6.)

The Supreme Court has found that a defendant could purposefully avail itself of a forum by "deliver[ing] its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum [s]tate." World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980). The stream of commerce theory refers to "'the movement of goods from manufacturers through distributors to consumers,' ending in the forum state." Syngenta Crop Prot., LLC v. Willowood, LLC, 139 F. Supp. 3d 722, 730 (M.D.N.C. 2015). The Fourth Circuit adopted the "stream-of-commerce-plus" framework developed in Asahi Metal Indus. Co., Ltd. v. Superior Court, 480 U.S. 102 (1987) when assessing whether or not the foreign producer of an allegedly defective product has established minimum contacts with the forum state where a plaintiff resides. See, e.g., Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 946-47 (4th Cir. 1994). The "stream-of-commerce-plus" test is premised on the notion that when a manufacturer places its product into distribution channels, it is foreseeable that the stream will eventually sweep the product into the forum state. Asahi, 480 U.S. at 110. But in addition to foreseeability, the "stream-of-commerce-plus" test requires "[a]dditional conduct of the defendant" that "may indicate an intent or purpose to

serve the market in the forum State." Id. at 112. In Asahi, Justice O'Connor provided several explicit examples of such conduct, including "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." Id.

Generally, merely placing goods in the stream of commerce will not subject a corporation to jurisdiction; however, when coupled with the expectation that those goods will be purchased by consumers in the forum, this can be evidence of purposeful availment. Burger King, 471 U.S. at 472; see also J. McIntyre Machinery, Ltd. v. Nicastro, 564 U.S. 873, 881-82 (2011) (holding that placement of goods into the stream of commerce with the expectation that these goods will be purchased by consumers within the forum state may indicate purposeful availment). Thus, the principal inquiry is whether or not a defendant's activities manifest an intention to submit to the power of the forum state. Id. at 882.

Jayco assembles recreational vehicles that are sold to independently owned and operated dealerships throughout the United States, including North Carolina. Jayco has six authorized dealers in North Carolina selling Jayco products. The presence of authorized dealers is an indication of intent to sell in North Carolina and knowledge on Jayco's part that Jayco RVs would be sold in North Carolina. In addition, those dealers are an authorized channel for providing advice and service in North Carolina. The presence of these authorized dealerships indicate Jayco's

13

"reaching" into North Carolina to solicit business and evidence long-term activity in North Carolina by virtue of the permanence of a dealership. In addition, although there is neither a purchase agreement nor any sales contract between Jayco and Mr. Hicks, the RV did come with a written limited warranty which "entitles [Mr. Hicks] generally to repair or replacement of any covered defect in material workmanship in the [RV] that is attributable to Jayco." ((Newcomer Aff. [Doc. #11-1]) ¶¶ 7-9.) The warranty work could be done at any authorized Jayco dealer in the United States or at Jayco in Indiana. (Id. ¶ 9.) This evidences Jayco's intent to provide servicing of its products in North Carolina - another indication of purposeful availment. Taken in concert, Mr. Hicks' allegations provide sufficient evidence to establish a prima facie showing that Jayco purposely availed itself of the privileges of conducting business in North Carolina, satisfying the first prong of specific jurisdiction analysis. The allegations in the Complaint coupled with the Newcomer affidavit establish the requisite regular flow of products and sales plus additional conduct directed at North Carolina such that the "stream-of-commerce-plus" test is satisfied.

    The next inquiry is whether or not Jayco's contacts with North Carolina form the basis for the present lawsuit. To date, the Fourth Circuit has not adopted a particular approach to address the second prong, but in at least one decision, CFA Inst., 551 F.3d 285, it appears to have employed the "but for" standard. Polyquest, Inc. v. Vestar Corp, LLC, 2014 WL 496494, at *6 (E.D.N.C. February 6, 2014). "[T]he but for standard, is satisfied when the plaintiff's claim would not

have arisen in the absence of the defendant's contacts." Id. See also, e.g., Rhodehouse v. Ford Motor Company, No. 2:16-cv-01892-JAM-CMK, 2016 WL 7104238, at *4 (E.D.Cal. Dec. 5, 2016) (using the "but for" test to find that the plaintiff's claims arose out of defendant's contacts with California in a personal injury lawsuit when a truck that was manufactured in Kentucky and sold to an independently-owned dealership in Canada was in an accident in California where plaintiff was injured).

Two cases, Morris v. SSE, Inc., 843 F.2d 489 (11th Cir. 1988) and Stewart v. Jayco, No. ELH-16-3494, 2017 WL 193296, (D. Md. Jan. 18, 2017), are informative to this analysis. In the United States District Court for the District of Maryland's Stewart decision, the plaintiffs were Maryland residents who purchased a Jayco RV from Camping World, an authorized Jayco dealer in Colorado. Stewart, 2017 WL 193296 at *1. Like the present action, the Stewart plaintiffs sued Jayco because the RV was "plagued by non-stop problems arising from defects in manufacturing of the vehicle" resulting in "the vehicle . . . constantly and regularly having to be repaired with non-stop continuing problems," and Jayco moved to dismiss the action for lack of personal jurisdiction. Id. at *2.

The Stewart court found that the plaintiffs had not made a prima facie showing of personal jurisdiction, because "the conduct of Jayco in Maryland [was] not the conduct that gave rise to the cause of action." Id. at *11. Ultimately, the Stewart court found

> Here, although plaintiffs contend that Jayco sells its products in
> Maryland to a single dealer with three locations in Maryland, plaintiffs

15

>did not purchase their Motorhome from or through that dealer. Nor do they allege that they used Jayco's website or that Jayco was in any way involved with plaintiffs' decision to purchase a Jayco Motorhome in Colorado. And, after plaintiffs bought the vehicle in Colorado, they had it repaired in Pennsylvania. . . . [P]laintiffs have not alleged that any contacts between Jayco and the State of Maryland are related to, or give rise to, the cause of action.

Id. at *12. See also Killion v. Commonwealth Yachts, 421 F. Supp. 2d 246 (D. Mass. 2006) (finding that, in a similar fact pattern involving a defective boat, despite manufacturer's contacts with the state where plaintiff sued, the contacts did not give rise to the cause of action).

Like the plaintiffs in Stewart, Mr. Hicks contends that Jayco sells its products in North Carolina through authorized dealers and Jayco's website directs potential customers to these dealers, but Mr. Hicks did not purchase his RV from any of the North Carolina dealers. Nor does Mr. Hicks allege that he used Jayco's website or that Jayco was in any way involved with his decision to purchase a Jayco RV in Tennessee. Also similar to Stewart, in the present action, Jayco contends that its contacts with North Carolina do not form the basis for the lawsuit.

>[T]he alleged injury did not occur in North Carolina. Pursuant to N.C. Gen. Stat. § 25-2-725(2), [a] breach of warranty occurs when tender of delivery is made. In the present case, Plaintiff purchased and received the Motorhome directly and solely from Tennessee RV in Knoxville, Tennessee.

(Br. in Supp. of Def.'s Mot. to Dismiss [Doc. #10] at 12.) Jayco is correct in this assertion with regard to the breach of implied warranty of merchantability claim.

When addressing the elements of a product liability claim based on the implied warranty of merchantability, the North Carolina Court of Appeals explained that, "[a] products liability claim grounded in warranty requires the plaintiff prove (1) the defendant warranted the product (express or implied) to plaintiff, (2) *there was a breach of that warranty in that the product was defective at the time it left the control of the defendant*, and (3) the defect proximately caused plaintiff damage." Red Hill Hosiery Mill, Inc. v. MagneTek, Inc., 582 S.E. 2d 632, 636 (N.C. Ct. App. 2003)(emphasis added). Mr. Hicks' cause of action for breach of the implied warranty of merchantability occurred when he took possession of the RV in Tennessee. That is when and where the RV left control of the defendant. Based on the pleadings, at this stage of the litigation, Mr. Hicks has not met his burden to show that this claim arose out of Jayco's contacts with North Carolina.

However, a portion of Mr. Hicks' second claim does arise out of Jayco's contacts with North Carolina. Mr. Hicks' Magnuson-Moss claim includes the assertion that "[p]laintiff gave defendant a reasonable opportunity to cure its failure to comply with its warranties, but defendant has been unable to do so." (Compl. [Doc. #5] ¶ 38.) "Under the [Magnuson-Moss] act, the seller of goods must be given a 'reasonable opportunity to cure' the 'failure to comply' with a warranty before a cause of action will arise under the Act." Watson v. Fleetwood Motor Homes of Indiana, Inc., No. 1:06CV275, 2007 WL 2156351, at *2 (W.D.N.C. July 24, 2007). This is where the present action differs from the facts in Stewart and is more analogous with Morris.

17

In Morris, the Eleventh Circuit Court of Appeals found personal jurisdiction proper in the Southern District of Alabama over a Pennsylvania corporation headquartered in New Jersey in a lawsuit brought by a Mississippi resident regarding a parachuting death in Alabama. The parachute was originally purchased in Michigan but the deceased had taken it to a store in Alabama for repairs. The store sent the device to the out of state manufacturer for repairs. After the repairs were complete, the manufacturer sent the parachute back to Alabama where the deceased used it and died in a jumping accident. In addressing personal jurisdiction, the Eleventh Circuit first addressed the stream of commerce plus test and then addressed the second prong by analyzing whether or not the repair work done out of state was related to the injury in Alabama. Morris, 843 F.2d at 495–96. Ultimately, after finding minimum contacts met, the Morris court found that the claim arose out of the manufacturer's contacts with Alabama, because the manufacturer took the device from Alabama, repaired it, and then returned it into the Alabama market for use there.

Unlike the plaintiffs in Stewart, Mr. Hicks did have his RV repaired in North Carolina at a Jayco authorized dealer and the defects were not cured. And similar to Morris, the warranty work culminated in Jayco coming to North Carolina to retrieve the RV from the authorized dealer to take it to Indiana for more repair work and then returning the RV to North Carolina for use. This is evidence of a nexus between Jayco's purposeful availment of the privilege of doing business in North Carolina and Mr. Hicks' second claim. Jayco warranty work was done on the

Hicks' RV in North Carolina and a portion of the failure to cure the defects by Jayco also took place in North Carolina.  Accordingly, Mr. Hicks has plead enough at this stage to show his second claim arises out of Jayco's contacts with North Carolina, and thus, the second prong has been met.  See, e.g. Dinkel v. Crane Care, Inc., No. Civ. 09-388 LH/RHS, 2010 WL 11453201, at *5 (D.N.M. Jan. 28, 2010) (discussing possible nexus between forum and cause of action when warranty repairs were performed in the forum state).

Under the final prong - the constitutional reasonableness inquiry - a defendant "who purposefully has directed his activities at forum residents" defeats jurisdiction if he can "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477.  Jayco did not address the constitutional reasonableness inquiry in any of its pleadings.  This Court recognizes that Jayco will have some expense and burden in defending an out of state lawsuit, as would any out of state defendant,  but does not find that it would be unreasonable for Jayco to defend a lawsuit in North Carolina.  Jayco has six authorized dealerships in North Carolina to whom it sells Jayco products and authorizes warranty work here.  A lawsuit in this forum is a known possibility for Jayco.  As Jayco has purposefully availed itself of the privilege of doing business in North Carolina, a portion of the lawsuit arises from Jayco's contacts with North Carolina, and jurisdiction is constitutionally reasonable, Mr. Hicks has met his prima facie burden as to specific jurisdiction over Jayco with regard to the Magnuson-Moss claim.

However, specific jurisdiction must be established for each claim alleged. N.C. Mut. Life Ins. Co. v. McKinley Fin. Serv., Inc., 386 F. Supp. 2d 648, 656 (M.D.N.C. 2005). A court may, nonetheless, exercise "pendent personal jurisdiction" over any claim that arises out of a common nucleus of operative facts as the claim over which the court has personal jurisdiction. N.C. Mut. Life Ins. Co., 386 F. Supp. 2d at 656. Whether or not claims form part of the same case or controversy "is determined by whether they derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding." Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 615 (4th Cir. 2001). Here, Mr. Hicks' claims center around his purchase of an allegedly faulty Jayco RV and the repair work done on that RV. As both claims arise out of a single purchase, subsequent repairs, and warranty work, the claims arise out of a single chain of events, or a "common nucleus of operative facts." Accordingly, the exercise of pendant personal jurisdiction is proper and the Court will retain jurisdiction over both claims.

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Jayco, Inc.'s Motion to Dismiss [Doc. #9] is **DENIED**.

This the 15th day of March, 2018.

        /s/ N. Carlton Tilley, Jr.
    Senior United States District Judge